Savage & others *v.* Mason.

---

### JAMES SAVAGE & others *vs.* JONATHAN MASON.

By an indenture of partition between the proprietors in common of a large number of lots of land, in Boston, it was agreed, that certain covenants, conditions and articles contained in the deed should be regarded as perpetual and fundamental, and deemed to run with the land thereby divided, and that all conveyances of the same, and all buildings thereon to be erected, should be and forever remain subject to all such covenants, conditions and articles: One of these covenants provided, that the centre of party walls, of every brick or stone building, might be placed upon the lines dividing lots from contiguous lots, and that the owner of a contiguous lot, whenever he should make use of any such wall, in any building, should pay for one half of the wall by him so used: A, on the 29th of November, 1839, purchased one of the lots, being lot numbered thirty-six, embraced in the partition, and built a brick dwelling-house thereon, and placed the centre of the wall on the westerly side thereof upon the line dividing the same from the contiguous lot numbered thirty-seven: On the 1st of December, 1840, A conveyed lot numbered thirty-six, with the erections thereon, together with all the rights and subject to all the restrictions in the deed of partition to B, by whom the same was conveyed in the same manner, on the 1st of December, 1841, to the plaintiffs: The defendant, being the proprietor of lot numbered thirty-seven, under the partition, on the 11th of March, 1844, agreed to convey the same to C, at any time within three years, upon his building a brick dwelling-house thereon within a time fixed, and paying the defendant a specified sum therefor, at a time stated: C, having performed the agreement on his part, the defendant conveyed to him lot numbered thirty-seven, with the dwelling-house erected thereon, on the 8th of November, 1844, and C paid A the value of one half of the party wall between lots numbered thirty-six and thirty-seven, on receiving a bond of indemnity from A, against the claims of the plaintiffs therefor: The plaintiffs, on the 23d of December, 1845, demanded payment of the defendant for one half the value of the wall so used for the building erected on lot numbered thirty-six, and payment being refused by him, brought their action of covenant to recover the same: It was held, that the covenant in the indenture of partition, relating to party walls, was a covenant running with the land, the liability to perform and the right to take advantage of which passed with the estates embraced in the partition to assignees and that the plaintiffs were entitled to recover thereon

ALL the facts in this case sufficiently appear in the opinion of the court ; except that the conveyance, therein mentioned, from the heirs of Benjamin Joy, to John F. Loring and Henry Andrews, of the 5th of January, 1835, was one of the defective conveyances, mentioned in the next preceding case of *Sohier* v. *The Massachusetts General Hospital ;* so that the plaintiffs, as to a portion of the estate, to which they derived title from Loring and Andrews, were seized only of an estate for the life of one of the female devisees of Benjamin Joy.

The case was argued by *J. A. Andrew,* for the plaintiffs, and by *B. Rand,* for the defendant.

FLETCHER, J. This is an action of covenant. The plaintiffs put into the case an indenture, of which the following are extracts : —

" This indenture of four parts, made and concluded the first day of June, 1826, by and between Harrison Gray Otis, Jonathan Mason, Benjamin Joy, and William Sullivan, esquires, all of Boston, in the county of Suffolk, and commonwealth of Massachusetts, witnesseth : Whereas the above named parties are before the ensealment of these presents seized in fee as tenants in common of sundry pieces or lots of land, situated at said Boston, in the westerly part thereof, on the slope of what is known by the name of Mount Vernon, and bordering on Pinckney street, Cedar or George street, and on Sumner, formerly called Olive street, which pieces or lots are delineated on the annexed plan, and which are hereinafter particularly described, and which pieces or lots of land they have agreed to divide between them, so that each of the said parties may hold his part thereof in severalty, to him, his heirs and assigns forever, as is hereinafter particularly expressed and declared, It is therefore hereby covenanted and agreed by and between the said parties, and their heirs, executors, administrators and assigns, that they will hereafter stand seized of the premises in severalty, in the manner following : " —

The indenture then proceeds to describe particularly the

pieces and lots of land set out and conveyed in severalty to each of the said parties, and, after describing the same, contains the following clause: —

"And it is hereby agreed, and each of the said parties, for himself severally, and for his heirs, executors, administrators, and assigns, covenants and agrees with the other parties, jointly and severally, and with their and each of their heirs, executors, administrators, and assigns, that the following shall be regarded as perpetual and fundamental covenants, conditions and articles, in the partition by these presents made, and deemed to run with the land hereby divided, and that all deeds, grants, leases, conveyances, or other instruments, whatsoever, to be made by either of said parties, or their heirs or assigns, of or concerning the land or any part of it, hereby set off and divided to him in severalty, and all buildings thereon to be erected, shall be and forever remain subject to all and singular the said covenants, conditions and articles, by each of them, their heirs and assigns, to be faithfully kept and performed."

The third of these perpetual, fundamental covenants which were to run with the land, as before expressed, was as follows: —

"Third, the centre of party walls, of every brick or stone building, may be placed upon the lines dividing said lots from contiguous lots, and the owner of such contiguous lots, whenever he shall make use of the same, in any building, shall pay [for] one half of the wall by him so used."

In this partition among the parties to the indenture, lot numbered thirty-six on Pinckney street was set off and conveyed to Benjamin Joy, with the covenants and agreements aforesaid.

It appeared, that this lot numbered thirty-six was conveyed by the heirs of Joy, on the 5th of January, 1835, to John F. Loring and Henry Andrews, and by Loring and Andrews, by a deed dated November 29, 1839, to Ezekiel W. Pike, "together with all the rights, easements, and privileges thereto belonging, subject to all the conditions and restric-

tions contained in a certain deed of division made between H. G. Otis and others, dated," &c. Pike entered upon and took possession of the lot, under the deed to him, and built a brick dwelling-house thereupon, and placed the centre of the party wall of the westerly side of the house upon the line dividing lot thirty-six from the contiguous lot thirty-seven, on the plan referred to in the indenture.

Pike, by a deed dated December 1, 1840, conveyed lot numbered thirty-six to Luther S. Cushing and wife, " to-gether with all the rights, easements and privileges thereto belonging, and the house thereon standing, and subject to al. the restrictions and conditions contained in a certain deed of division made between H. G. Otis and others," &c. Cushing and wife, by a deed dated December 1, 1841, conveyed the same estate to the plaintiffs, " together with the said dwelling-house, with all the rights, easements and privileges thereto belonging, and subject to all the conditions and restrictions " referred to in the said last above named deed. The plaintiffs thus trace a title to themselves to lot numbered thirty-six from the said Benjamin Joy.

It further appeared, that in the partition made by the indenture above mentioned, lot numbered thirty-seven, which was contiguous to lot numbered thirty-six, was set off and conveyed to Jonathan Mason, named in the indenture, with the covenants and agreements aforesaid, and that the same lot numbered thirty-seven was set off to the defendant, as one of the heirs of the said Jonathan Mason, upon a division of his estate.

It was also in evidence, that while the defendant held and was the owner of lot numbered thirty-seven, set off to him as aforesaid, a brick dwelling-house was erected thereupon, the easterly wall of which was the wall of the plaintiffs' house, the centre of the westerly side of which had been placed upon the party line, as aforesaid, on or before the first day of July, 1844, and the wall of the plaintiff's house thereupon and thereafter used.

On the 23d of December, 1845, a formal demand was made by the plaintiffs upon the defendant, for the value of the wall

so used, which not being paid, this suit was brought to recover one half the value of the partition wall belonging to the plaintiffs, according to the covenant and provision in the indenture of partition.

It appeared, further, that by an agreement dated March 11th, 1844, between the defendant and Joseph Lincoln and Eber Taylor, the defendant agreed to convey lot numbered thirty-seven to them, at any time within three years from the 11th of March, 1844, upon the performance of their undertaking to build a brick dwelling-house on the same lot within a time specified, and to pay the defendant for the lot a specified sum at a time stated.

By a deed dated November 8th, 1844, the defendant conveyed lot numbered thirty-seven to Lincoln and Taylor, with the dwelling-house by them erected thereon, subject to all and singular the covenants, conditions and articles contained in the indenture of partition between H. G. Otis and others.

It appeared, that the sum of $300, the agreed value of one half of said wall, was paid by Lincoln and Taylor, under a bond of indemnity, to Ezekiel W. Pike, above mentioned, after the completion of the house on lot numbered thirty-seven, in September, 1844.

Several points were stated in the argument, but the only one which requires any consideration, and the one on which the decision turns, is, whether the covenant in the indenture of partition, in regard to the wall of buildings to be placed on the lines dividing the lots, and providing for the use of and payment for such wall, and on which covenant this action is founded, is a covenant running with the land.

A mere statement of the covenant would seem sufficient to remove all doubt or question on this point. In the indenture of partition, the several parties agree and bind themselves and their representatives, that certain covenants, conditions and articles therein contained shall be regarded as perpetual and fundamental, and deemed *to run with the land* thereby divided, and that all conveyances or other instruments whatsoever, to be made of or concerning the land, or any part of

it, and all buildings thereon to be erected, shall be and forever remain subject to all and singular the said covenants, conditions and articles.

The third of these perpetual and fundamental covenants, which the parties expressly declared should run with the land, provides that the centre of party walls of every brick or stone building may be placed upon the lines dividing said lots from contiguous lots, and that the owner of such contiguous lot, whenever he shall make use of the same in any building, shall pay for one half of the wall by him so used.

The intention of the parties to the indenture, that this covenant should run with the land, is express and clear. The provision in question is a most reasonable one, and no doubt was considered by the parties, and in fact is, highly beneficial, and not burdensome, to the land.

A covenant is said to run with the land, when either the liability to perform it or the right to take advantage of it passes to the assignee of the land. The liability to perform, and the right to take advantage of, this covenant, both pass to the heir or assignee of the land, to which the covenant is attached. This covenant can by no means be considered as merely personal, or collateral, and detached from the land. There was a privity of estate between the covenanting parties in the land to which the covenant was annexed. The covenant is in terms between the parties and their respective heirs and assigns ; it has direct and immediate reference to the land ; it relates to the mode of occupying and erjoying the land ; it is beneficial to the owner as owner, and to no other person ; it is in truth inherent in and attached to the land, and necessarily goes with the land into the hands of the heir or assignee.*

According to the report of the case, the defendant m ist be defaulted.

---

* See *Morse* v. *Aldrich,* 19 Pick. 449 ; *Hurd* v. *Curtis,* 19 Pick. 459 ; *Norman* v. *Wells,* 17 Wend. 146, 150 ; *Vernon* v. *Smith,* 5 Barn. & Ald. 1 ; *Kuppell* v. *Bailey,* 2 Mylne & K. 517 ; *Bedford* v. *British Museum,* 2 Mylne & K. 562 ; Platt on Covenants, 460 ; 1 Smith's L. C. 31, 38.